UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STONEY HARRISON,

                       Plaintiff,

            v.

KELLI BRODERICK,
STEPHANY MILLER,
JAMES JOHNSON,
BISHME NELSON,
FREDERICK KINTZEL, and
KEVIN BROWN,

                       Defendants.
_____

                           REPORT
                           and
            RECOMMENDATION

             18-CV-821JLS(F)

APPEARANCES:       STONEY HARRISON, *Pro se*
                        88T1745
                        Wende Correctional Facility
                        Box 1187
                        Alden, New York  14004-1187

                        LETITIA A. JAMES
                        ATTORNEY GENERAL, STATE OF NEW YORK
                        Attorney for Defendants
                        KATHLEEN M. KACZOR
                        Assistant Attorney General, of Counsel
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, New York  14202

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on September 16, 2020, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion for judgment on the pleadings filed October 14, 2021 (Dkt. 31).

## BACKGROUND

Plaintiff, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS") and proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that upon being transferred to Wende Correctional Facility ("Wende"), Defendants, all employees of DOCCS, denied Plaintiff his rights to the free exercise of his religion, Nation of Islam, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq*. ("RLUIPA"), by confiscating a religious pendant maintaining both the pendant and chain on which it was hung exceeded the dimensions permitted by the relevant DOCCS regulations.  In an Order filed January 14, 2020 (Dkt. 11) ("January 14, 2020 Order"), District Judge Lawrence J. Vilardo[1] granted Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. 7), and screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A, and ordered the Complaint be dismissed unless Plaintiff, within 45 days, filed an amended complaint specifically alleging that Defendants' actions substantially burdened Plaintiff's exercise of his religion, noting that although Plaintiff was not required to show he was prevented from doing something expressly required by his religion, or compelled to do something expressly forbidden by his religion, Plaintiff "should ground his professed belief in some Nation of Islam custom or teaching."  January 14, 2020 Order at 7 & n. 1.  Judge Vilardo also dismissed with prejudice Plaintiff's RLUIPA claims for money damages asserted against Defendants in their official capacities because such claims are foreclosed by sovereign immunity.  *Id*. at 8-9.

---

[1] By Text Order entered September 15, 2020, the action was reassigned to District Judge Sinatra.

On February 3, 2020, Plaintiff filed an Amended Complaint (Dkt. 13) ("Amended Complaint"), attaching exhibits 1 through 28 ("Plaintiff's Exh(s). __").  Plaintiff names as Defendants DOCCS Correctional Officer ("C.O.") Kelli Broderick ("Broderick"), C.O. Stephany Miller ("Miller"), Correctional Sergeant James Johnson ("Johnson"), Wende Coordinating Chaplain Bishme Nelson ("Imam Nelson"), Inmate Grievance Program Sergeant Frederick Kintzel ("Kintzel"), and Wende Deputy Superintendent for Security Kevin Brown ("Brown") (together, "Defendants").  On February 7, 2020, Judge Vilardo screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A, February 7, 2020 Order (Dkt. 14) ("February 7, 2020 Order"), finding Plaintiff's repleaded First Amendment and RLUIPA claims for injunctive and declaratory relief could proceed, but that Plaintiff's claims for money damages against Defendants in their official capacities were barred by Eleventh Amendment immunity.  February 7, 2020 Order at 2-3.  On October 13, 2021, Defendants filed an answer to the Amended Complaint (Dkt. 30).

On October 14, 2021, Defendants filed the instant motion for judgment on the pleadings (Dkt. 30) ("Defendants' Motion"), attaching the Memorandum of Law in Support of Defendants' Motion to Dismiss on the Pleadings Under Rule 12(c) (Dkt. 31-1) ("Defendants' Memorandum").  On November 10, 2021, Plaintiff filed his response generally opposing Defendants' Motion (Dkt. 33) ("Plaintiff's Response").  On November 29, 2021, Defendants filed the Reply Memorandum of Law in Further Support of Defendants' Motion for Judgement on the Pleadings (Dkt. 34) ("Defendants' Reply").  By letter to the undersigned filed February 25, 2022, Plaintiff, without obtaining the court's

approval, filed a photograph which Plaintiff maintains depicts the subject pendant. (Dkt. 35) ("Plaintiff's Sur-Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED in part and DENIED in part.

## FACTS[2]

On November 19, 2017, Plaintiff Stoney Harrison ("Plaintiff" or "Harrison"), an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), was transferred into Wende Correctional Facility ("Wende" or "the correctional facility"), and Plaintiff requested non-party C.O. Wyman ("Wyman") issue Plaintiff a permit for his personal property including, *inter alia*, a religious pendant ("pendant" or "medallion").[3]  Plaintiff maintains wearing the pendant is central to his exercise of the Muslim religion because certain Islamic symbols, including the star and crescent moon depicted on the pendant, propagate Islamic ideology and distinguish Plaintiff from the many Christian inmates.  Wyman advised Plaintiff the requested permits were issued by the package room.  On November 21, 2017, Plaintiff was called to Wende's package room, where Plaintiff asked Defendant Broderick for a permit for his pendant and other items, prompting Broderick to request to see the pendant. Plaintiff complied, removing the pendant and the chain ("chain") on which it hung from his neck and handing the pendant and chain to Broderick who advised the chain exceeded the 18" length permitted by the relevant DOCCS regulation.  Plaintiff

---

[2] Taken from the pleadings filed in this action.
[3] Although Plaintiff requested a permit for the pendant, the context of the Amended Complaint establishes Plaintiff was wearing the pendant and the requested permit would permit Plaintiff to continue to wear the pendant at Wende.

ab

requested a copy of DOCCS Directive # 4911 ("Directive # 4911"),[4] and showed Broderick the 18" length limit pertains only to female jewelry, and that there was no similar restriction for religious pendants under the "Religious Articles" section of Directive # 4911.  At Broderick's request, Defendant Miller joined the discussion, but neither Broderick nor Miller conceded Plaintiff's construction of Directive # 4911 was correct, and Broderick confiscated the pendant and chain, providing Plaintiff with a receipt for both items.  Plaintiff completed the required form to request a review of the confiscation, but the confiscation was upheld on review on November 23, 2017, with Plaintiff told Defendant Johnson advised the chain's length of 24" exceeded the maximum 18" length permitted.

Later on November 23, 2017, Plaintiff provided Miller with a copy of a March 16, 2016 decision issued by DOCCSs' Inmate Grievance Program ("IGP") Central Office Review Committee ("CORC") ("March 16, 2016 CORC Decision")[5] finding with regard to a previously filed inmate grievance[6] that Directive # 4911 does not limit the length of a religious chain[7] to 18"; rather, a security review should be conducted to determine whether a religious chain posed a security threat based on its length or thickness.  Miller asked why she did not have a copy of the March 16, 2016 CORC Decision, and Plaintiff

---

[4] A copy of the relevant portions of DOCCS Directive # 4911 is filed as Plaintiff's Exh. 2 (Dkt. 13 at 20-21).  Although Directive # 4911 pertains to "Packages & Articles Sent or Brought to Facilities," DOCCS Directive # 4202 pertaining to "Religious Programs and Practices" specifically provides that the permitted size or design of "religious medallions, beads, and shrines" are "subject to the provisions of Directive # 4911 . . . ."

[5] Plaintiff's Exh. 7 (Dkt. 13 at 30-31).

[6] Nothing in the record indicates, nor does Plaintiff argue, that the March 16, 2016 CORC Decision pertained to an inmate grievance filed by Plaintiff.  That the March 16, 2016 CORC Decision states the inmate sought restitution for the unwarranted confiscation of a cross and religious chain, suggesting the Plaintiff in the instant action, who alleges he is a Muslim, was not the grievant relative to the March 16, 2016 CORC Decision.

[7] The term "religious chain" pertains to a chain on which a religious pendant or medallion is hung.

again asked Miller to return his chain and pendant, but Miller refused, telling Plaintiff to have for a visitor to pick up the chain within 14 days, or to arrange for an alternative method for disposing of the chain and pendant.  Amended Complaint ¶ 12.  Plaintiff filed an inmate grievance ("the grievance") regarding the confiscation of his chain and pendant on November 23, 2017.

Plaintiff maintains he was advised by the inmate grievance clerk that Defendants Imam Nelson and Kintzel would investigate the grievance after which Plaintiff's chain would be returned to him.  Plaintiff saw Imam Nelson at orientation where Plaintiff asked Imam Nelson if he had seen Plaintiff's grievance.  Imam Nelson responded he had seen the grievance and intended to advise Wende's package room staff that Directive # 4911 did not prohibit Plaintiff from possessing the chain.  According to Imam Nelson, Wende's package room staff "felt some kind of way [*sic*] because Plaintiff reached over the counter and tried to take the chain out of CO Broderick's hand."  Amended Complaint ¶ 18.  Imam Nelson further advised Plaintiff the package room staff was then asserting the pendant measured more than the allowed 2" in diameter.  At a hearing on Plaintiff's grievance ("grievance"),[8] Plaintiff was advised by the hearing officer, Defendant Kintzel, that the pendant's diameter exceeded 2", but Plaintiff's request to have the pendant measured to confirm the pendant's diameter was refused, and Plaintiff was advised that he could have the chain but not the pendant, and the chain would be held by the Inmate Records Coordinator ("IRC") until Plaintiff received a pendant that complied with the permitted dimensions, *i.e.*, a "compliant pendant," and that Plaintiff had to send home the pendant that was confiscated from him.  Grievance

---

[8] The date of the grievance hearing is not in the record.

Decision.[9]  Plaintiff did not then arrange for the pendant to be sent home, but appealed the grievance decision to the Superintendent who, on December 12, 2017, upheld the decision ("Superintendent's Decision").[10]

On April 18, 2018, Plaintiff completed paperwork to have the pendant be sent to the store from which it was purchased, requesting the pendant be measured, and the pendant was mailed out of the correctional facility.  On February 27, 2019, CORC, upon further review, issued a decision ("CORC Decision"),[11] affirming the Superintendent's Decision and noting Plaintiff's grievance was granted with regard to the chain which was provided to Plaintiff after Plaintiff was issued a religious pendant that complied with the specifications of Directive # 4911.  Additional letters Plaintiff wrote to Defendants Brown and the facility superintendent did not provide Plaintiff with any further relief.

## DISCUSSION

### 1.    Judgment on the Pleadings

Defendants move pursuant to Fed.R.Civ.P. 12(c) ("Rule 12__"), for judgment on the pleadings.  "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).  "'To survive a Rule 12(c) motion, [the plaintiff's][12] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Hayden v.*

---

[9] Plaintiff's Exh. 12 (Dkt. 13 at 42).
[10] Plaintiff's Exh. 14 (Dkt. 13 at 47).
[11] Plaintiff's Exh. 15 (Dkt. 13 at 51).
[12] Unless otherwise indicated, bracketed material has been added.

*Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (bracketed material in original)). "'The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief ... calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.'" *Id.* (quoting *Lynch*, 952 F.3d at 75 (internal quotation marks omitted)). In making this assessment, all reasonable inferences must be drawn in the plaintiff's favor. *Id.* (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete. *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial"). Nevertheless, "[u]ntil both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party." *Lively*, 6 F.4th at 301.

"'[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial.'" *Lively*, 6 F.4th at 301 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted)); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that dismissal under Rule 12(c) is appropriate for self-defeating complaints—*i.e.*, complaints "whose allegations show that there is an airtight defense"). Accordingly, "where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'" *Id.* at 302 (quoting *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); and citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021)

("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.")).  A court thus "may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.*

In considering a Rule 12(b)(6) motion, the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead

"enough facts to state a claim to relief that is plausible on its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)) (bracketed material in original).  On a motion for judgment on the pleadings, "'a court may consider ... matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted; bracketed material and ellipses in original)).

In the instant case, Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of "rights, privileges, or immunities secured by the Constitution and laws of the United States."  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'"  *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ."  *Id.*  To succeed on a § 1983 claim, a plaintiff must

establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Because Plaintiff's claims assert violations of the First Amendment and the RLUIPA, § 1983 is the proper vehicle for asserting the claims.

Defendants argue in support of judgment on the pleadings that Plaintiff lacks standing to bring claims for prospective relief or any claim against Defendants Broderick, Miller and Johnson against whom Plaintiff fails to allege any injury-in-fact, Defendants' Memorandum at 7-9, sovereign immunity bars Plaintiff's claims for prospective relief, *id*. at 9-10, Plaintiff's claim for money damages fails because no physical injury is alleged, *id*. at 10-11, Plaintiff fails to allege the requisite substantial burden on the exercise of his religion, *id*. at 11-13, Plaintiff's own allegations attribute any alleged violation of his religious freedom to Defendant Nelson, and Defendants Broderick, Miller, and Johnson were, at most, negligent which does not support a § 1983 claim, *id*. at 13-15, no personal involvement is alleged against Defendants Brown, *id*. at 15-17, and Kintzel, *id*. at 17-19, and all of Plaintiff's claims are barred by qualified immunity. *Id*. at 19-22. Plaintiff's Response consists of a general denial of Defendants' arguments in support of judgment on the pleadings. Plaintiff's Response, *passim*. In further support of judgment on the pleadings, Defendants present a summary of their initial arguments. Defendants' Reply, *passim*. The court addresses each of Defendants' arguments in turn.

Preliminarily, insofar as Defendants maintain Plaintiff attaches no religious significance to the chain, because the pendant was hanging from the chain when the

chain was confiscated, Defendants' seizure of the chain necessarily included the seizure of the pendant.  Accordingly, the court's use of the term "chain" refers the chain with the pendant.

## 2.    Standing

Defendants argue that because Plaintiff has received both the chain Broderick confiscated from Plaintiff on November 21, 2017, as well as a religious pendant that indisputedly complies with Directive # 4199, Plaintiff has no continuing First Amendment or RLUIPA claim supporting Plaintiff's request for injunctive and declaratory relief, Defendant's Memorandum at 7-8, nor has Plaintiff alleged any injury in fact traceable to Defendants Broderick, Miller, and Johnson insofar as Plaintiff alleges no religious significance to the chain which Broderick, Miller, and Johnson refused to allow Plaintiff to possess, and the records Plaintiff attached to the Amended Complaint show Plaintiff was not allowed to possess the pendant because the pendant exceeded the permitted 2" in diameter, a determination that was made by Defendant Iman Nelson.  *Id*. at 8-9.  In opposition, Plaintiff references *Helling v. McKinney*, 509 U.S. 25 (1985), for the proposition that an inmate may assert an Eighth Amendment claim based on the prospect of future harm.  Plaintiff's Response at 1 ¶ 1.  In further support of judgment on the pleadings, Defendants differentiate that in *Helling*, the inmate plaintiff was alleging both a current health problem based on exposure to cigarette smoke, as well as the possibility of future physical harm in contrast to Plaintiff who has not and cannot allege any physical harm based on the confiscation of his chain and religious pendant. Defendants' Reply at 6-7.

It is basic that standing is required for subject matter jurisdiction by this court. *Strubel v. Comenity Bank*, 842 F.3d 181, 187–88 (2d Cir. 2016) (addressing challenge to constitutional standing raised for the first time on appeal because standing is "necessary" to subject matter jurisdiction).  To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must demonstrate (1) "injury in fact," (2) a "causal connection" between that injury and the complained-of conduct, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).  "[T]he case-or-controversy prerequisite to federal jurisdiction means that "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed . . . .'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997))).  "[A] case becomes 'moot,' and beyond federal jurisdiction, if there ceases to be an actual controversy. . . ." *Id*. (citing *Chafin v. Chafin*, 568 U.S. 165, 171-72 (2013).  In contrast, "'the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.'" *Id*. (quoting *Davis*, 554 U.S. at 734).

In the instant case, Defendants argue the Amended Complaint and the exhibits attached thereto establish that Plaintiff fails to allege an injury-in-fact traceable to Defendants Broderick, Miller, and Johnson who are alleged to have confiscated only Plaintiff's chain to which Plaintiff alleges no religious significance.  Defendants' Memorandum at 8.  Nor did Defendants Broderick, Miller, or Johnson determine the pendant was more than 2" in diameter, but such determination was made by Defendant

Imam Nelson.  *Id*. at 9.  Accordingly, Defendants maintain Plaintiff lacks standing to pursue his First Amendment Free Exercise Clause and RLUIPA claims against Broderick, Miller, and Johnson.  *Id*.  Because the pendant was attached to the chain, it is not clear from the record that the confiscation of the chain by Broderick, Miller, and Johnson did not also include confiscation of the pendant.  Accordingly, Defendants' Motion should be DENIED as to this aspect of their argument.

With regard to Defendants' argument that Plaintiff is in possession of both his chain and a compliant pendent, although Defendants couch their challenge to subject matter jurisdiction as a lack of standing, it is not clear from the record whether Plaintiff was in possession of the chain and religious pendant when Plaintiff commenced this action on July 27, 2018; rather, Defendants reference in support of their standing argument that when Plaintiff filed the Amended Complaint, he was in possession of his chain and religious pendant the February 27, 2019 Inmate Grievance Committee CORC Decision reviewing Plaintiff's grievance which states that "the chain in question was held until an allowable pendant was received, and [Plaintiff] has since been issued both." Plaintiff's Exh. 15 (Dkt. 13 at 51).  Significantly, the CORC Decision does not specify when Plaintiff received the chain and religious pendant such that it is not possible to determine whether Plaintiff had standing to commence the instant action, filed July 27, 2018.  Nevertheless, because Plaintiff does not deny he is now in possession of both the chain and a compliant pendant, the court considers whether the case is now moot.

"The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic levels by the terms of Article III of the Constitution, which state that they may hear only 'Cases' or 'Controversies.'"  *Russman v. Board of Education of the*

*Enlarged City School District of the City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001) (quoting U.S. Const. art. III, § 2 cl. 1).  For the "case or controversy" requirement to be met, "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  *Id.*  Specifically, "[t]he requisite dispute must persist throughout the litigation ... from first filing in the district court through its many ascents and descents of the appellate ladder—and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot."  *Id.* (citing cases).  Whenever a case becomes moot, the court loses jurisdiction over it requiring the case be dismissed.  *Id.*  As such, "under the mootness doctrine, 'if an event occurs ... that makes it impossible for the court to grant any effectual relief whatever to a prevailing party,' [the court] must dismiss the case, rather than issue an advisory opinion.'"  *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

There exists, however, an exception to the mootness doctrine "where the case is 'capable of repetition, yet evading review.'"  *Russman*, 260 F.3d at 119 (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)).  "The capable-of-repetition principle applies only 'where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  "A recurrent dispute will 'evade review' if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court."  *Id.* (citing *Honig v. Does*, 484 U.S. 305, 322-23 (1988) (noting the likely mooting

"by the time review can be had in this Court" of any future lawsuit brought by plaintiff)).

"Given these strictures, it has been said that the exception 'applies only in exceptional

situations.'" *Id.* (quoting *Spencer*, 523 U.S. at 17). As the party seeking application of

the exception, Plaintiff "bears the burden of demonstrating that this controversy is

indeed 'capable of repetition, yet evading review.'" *Video Tutorial Services, Inc. v. MCI*

*Telecommunications Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (citing cases).

In the instant case, Plaintiff does not deny that his receipt of both the chain and

compliant religious pendant has rendered moot his claims. Nor does Plaintiff maintain

that the alleged wrongful confiscation of his chain and pendant falls within the mootness

doctrine exception because there is a reasonable expectation that Plaintiff will again be

subject to the same challenged action. Accordingly, Plaintiff has failed to meet his

burden of establishing the mootness doctrine exception applies.

Accordingly, Defendants' Motion should be GRANTED insofar as Plaintiff's

claims are moot, rendering the court without subject matter jurisdiction over them.

**3.     Eleventh Amendment/Sovereign Immunity**

Defendants argue that because Plaintiff has already received both his chain and

a compliant religious pendant, Plaintiff seeks only prospective relief which is barred by

the doctrine of sovereign immunity and is not subject to *the Ex Parte Young* exception

to Eleventh Amendment Immunity. Defendants' Memorandum at 9-10. In opposition,

Plaintiff argues state officials may be held personally liable for damages under § 1983

based on actions taken in Defendants' official capacities. Plaintiff's Response at 1 ¶ 1.

In further support of judgment on the pleadings, Defendants argue even if Plaintiff could

proceed on a First Amendment Free Exercise Clause claim, Plaintiff's remedy is limited

to nominal damages, which Plaintiff has not requested, because Plaintiff has conceded being issued both his chain and a compliant pendant, such that Plaintiff is not subject to ongoing or prospective harm.  Defendants' Reply at 5-6.

As previously stated, Background at 3, after screening the Amended Complaint, Judge Vilardo ordered that Plaintiff's repleaded First Amendment and RLUIPA claims for injunctive and declaratory relief could proceed, but that Plaintiff's claims for money damages against Defendants in their official capacities were barred by Eleventh Amendment immunity.  February 7, 2020 Order at 2-3.  Accordingly, any money damages for which Plaintiff maintains state officials can be personally liable under § 1983 are limited to nominative or punitive damages, neither of which Plaintiff seeks. *See* Amended Complaint at 16-17 (Relief).

Further, "[t]he Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of 'sovereign immunity' . . . .  This immunity extends not only to the states, but also to state agencies . . . .  The Eleventh Amendment also bars suits for damages against state officials acting in their official capacities."  *Bell v. N.Y. State Dep't of Corr.*, 2018 WL 11219948, *3 (N.D.N.Y. Mar. 20, 2018) (citing cases and quoting U.S. Const. amend. XI).  This Eleventh Amendment immunity "bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception."  *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019).  "[A]pplication of the *Young* doctrine is straightforward: A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against *individual state officers, as opposed to the state*, in their official capacities, provided that his complaint

(a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'"  *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (italics added) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).  In the instant case, because Plaintiff is in receipt of the chain and a compliant pendant, Plaintiff is not alleging an ongoing violation of federal law, requiring dismissal of his claims.

Defendants' Motion should be GRANTED on this aspect of Plaintiff's claims.

**4.    Money Damages**

Defendants argue Plaintiff's claim for compensatory damages against each Defendant in the amount of $ 500 fails because no physical injury is alleged as required. Defendants' Memorandum at 10-11.  Plaintiff's Response does not address this argument.

42 U.S.C. § 1997e(e) ("§ 1997e(e)") "provides that '[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.'  That provision bars recovery of compensatory damages for mental and emotional injuries, absent physical injury, in § 1983 actions." *Nash v. McGinnis.* 2008 WL 4898999, at *6 (W.D.N.Y.2008) (quoting 42 U.S.C. § 1997e(e)).  "'Courts have strictly construed this requirement, barring claims by prisoners who demonstrate solely emotional or mental injury and barring physical injury claims where the injury alleged is *de minimis*.'"  *Abdur–Raqiyb v. Erie County Medical Center,* 536 F.Supp.2d 299, 304 (W.D.N.Y.2008).  "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations.  Section 1997e(e) is a limitation on recovery of

damages for mental and emotional injury in the absence of or showing of physical injury, but does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002).  *See also Amaker v. Goord*, 2015 WL 3603970, at * 1 (W.D.N.Y. June 5, 2015) (holding § 1997e(e) bars awarding compensatory damages for violations of religious rights under the First Amendment unaccompanied by any physical injury).  Further, as discussed, Background at 3, Judge Vilardo already dismissed with prejudice Plaintiff's claims for money damages under the RLUIPA as barred by sovereign immunity.  January 14, 2020 Order (Dkt. 11) at 8-9.

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's request for money damages.

**5.    Substantial Burden**

Defendants argue in support of judgment on the pleadings that Plaintiff fails to allege the seizure of his religious pendant and chain constituted the requisite substantial burden on the exercise of his religion.  Defendants' Memorandum at 11-13.  In opposition, Plaintiff argues Defendants' seizure of his pendant constituted a violation of his First Amendment rights.  Plaintiff's Response at 1.

Although incarcerated persons within prison facilities are not entitled to the full gamut of rights guaranteed under the United States Constitution, the free exercise clause of the First Amendment, as well as the RLIUPA, do afford them at least some measure of protection, *Pell v. Procunier,* 417 U.S. 817, 822 (1974).  *See Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir. 2006).(citing RLUIPA, 42 U.S.C. § 2000cc-1)a)), and *Ford v.McGinnis,* 352 F.3d 582, 587 (2d Cir. 2003) (discussing requirements under

First Amendment Free Exercise Clause).  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citing cases). Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id*. (internal citations and quotation marks omitted).  Such limitations "arise both from the fact of incarceration and from the valid penological objectives . . . ." *Id*. (citations omitted).

Accordingly, as a threshold matter, "[t]he prisoner must show ... that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin,* 467 F.3d at 274–75.  In evaluating this factor, the court must be wary of "'question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'"  *McEachin v. McGuinnis,* 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699 (1989)). Instead, a court should consider only whether the particular plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and, in the individual's own scheme of things, religious."  *Ford,* 352 F.3d at 588 (quotation marks omitted).  Upon plausibly alleging the impeded belief was sincerely held, the plaintiff must plausibly allege such belief was subjected to a substantial burden which "exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quotation omitted) (alteration in original).  Once a plaintiff satisfies this burden, defendants must then "bear the relatively limited burden of identifying the legitimate penological interests that justifying impinging

conduct." *Salahuddin,* 467 at 275.  Whether an inmate's asserted religious beliefs are sincerely held, however, "is subjective and requires a determination of genuine issues of material fact." *Odom v. Dixon*, 2008 WL 466255, at * 7 (W.D.N.Y. Feb. 15, 2008).

In the instant case, Plaintiff alleges that "wearing the Islam pendant is central to Islamic Ideology, and has importance to [Plaintiff's] Islamic Family as pin-pointed at Qur'aanic Verse (sura 12:4) and that it was a gift that was purchased for me by Family during the Holy Month of Ramadhan [*sic*] from the . . . Islamic store."  Amended Complaint at 13 ¶ 4.  Plaintiff further explains the symbolic meaning of the images on the pendant, as well as that the seized pendant bears great sentimental meaning to Plaintiff because it was gifted to him during the month of Ramadhan.  *Id*. ¶¶ 2-3, 5. These allegations plausibly allege Plaintiff's sincere belief that wearing the seized pendant was central to his religious belief.

Nevertheless, Plaintiff has not "ground[ed] his professed belief in some Nation of Islam custom or teaching," as Judge Vilardo directed.  January 14, 2020 Order at 7 & n. 1 (noting that although Plaintiff was not required to show he was prevented from doing something expressly required or compelled to do something expressly forbidden by his religion, Plaintiff "should ground his professed believe in some Nation of Islam custom or teaching.").  Although Plaintiff references "Qur'aanic Verse (sura 12:4)," as the source of his sincere belief that wearing the pendant is central to his religious belief, Amended Complaint at 13 ¶ 4, a plain reading of the referenced verse establishes the verse, as recited by Plaintiff, *id*. at 13 ¶ 3, merely establishes that in the context of Islam, the sun, moon, and stars signify members of the Islamic family including, respectively, the father, mother, and children.  The verse does not, however, require

21

any adherent to the faith wear a pendant depicting these symbols. Nor does the article attached as Plaintiff's Exh. 20 to the Amended Complaint explaining that the Flag of Islam depicts the sun, moon, and eleven stars require such flag or any pendant or medallion containing such symbols be worn to practice the faith. Moreover, even if, as Plaintiff suggests, Amended Complaint at 16 ¶ 13, the wearing of the pendant depicting the symbols, allowed Plaintiff to visibly separate himself from the many Christian inmates, not only does Plaintiff fail to allege that separating himself from Christians is a necessary part of his religion, but it is simply implausible that Plaintiff could achieve such ends when he was required to wear the pendant underneath his clothing as Plaintiff admits. Amended Complaint at 14 ¶ 6. Plaintiff thus has failed to allege Defendants, by denying Plaintiff his religious pendant, substantially burdened Plaintiff's exercise of his religious beliefs. *Jolly*, 76 F.3d at 477. *See also Mitchell v. Annucci*, 2019 WL 3253192, at * 6 (N.D.N.Y. July 19, 2019) (dismissing inmate plaintiff's First Amendment claim based on the plaintiff's failure to allege how his inability to proselytize to other inmates substantially burdened his religious rights).

As such, Plaintiff fails to plausibly allege Defendants' confiscation of his chain and religious pendant substantially burdened Plaintiff's sincerely held religious beliefs and Defendants' Motion should be GRANTED on this ground.

## 6.    Negligence

Defendants argue Plaintiff's allegations attribute any alleged violation of his religious freedom by Defendant Imam Nelson, and that Defendants Broderick, Miller, and Johnson, by improperly construing Directive # 4911 were, at most, negligent which

does not support a § 1983 claim.  Defendants' Memorandum at 13-15.  Plaintiff does

not specifically argue in opposition on this point.

"[A] prison official must *knowingly* place a substantial burden on a prisoner's

religious beliefs to incur liability for damages under RLUIPA or the Constitution."

*Hamilton v. Countant*, 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) (italics in original

and citing cases).  Therefore, "damages claims based solely on the negligent

infringement of a prisoner's right to religious freedom are not actionable under either the

First Amendment or RLUIPA."   *Id*.  Claims alleging violation of an inmate plaintiff's

rights under the First Amendment and the RLUIPA resulting from negligence or mistake

have been dismissed. *See, e.g.*, *id.* at *6 (granting summary judgment where the

alleged violation of plaintiff's rights was "the result of errant paper work and a

miscommunication," which "resulted from, at most, negligence"); *Scott v. Shansiddeen*,

2013 WL 3187071, at *4 (N.D.N.Y. June 20, 2013) (granting summary judgment where

defendants' error did not "amount[ ] to anything more than negligence," which is "not

actionable under the First Amendment" or "sufficient to support a claim under

[RLUIPA]").  Similarly, in the instant case, Plaintiff claims violations of his religious rights

under the First Amendment and the RLUIPA based on a mistaken construction of

Directive # 4911 regarding the length of a chain permitted for a religious pendant, as

well as a mistaken measurement of Plaintiff's religious pendant.  Accordingly,

Defendants' Motion should be GRANTED insofar as Plaintiff's claims can be construed

as asserting negligence or mistake which does not support a § 1983 claim.

7.    **Personal Involvement**

Defendants maintain the action must be dismissed as against Brown and Kintzel against whom Plaintiff fails to allege any personal involvement in the asserted First Amendment and RLUIPA violations.  Defendants' Memorandum at 15-17 (Brown), and 17-19 (Kintzel).  Plaintiff has not responded in opposition to this argument.

A.    **Defendant Brown**

Plaintiff's claims against Defendant Brown are based on Brown's failure to take any corrective action relative to the confiscation of Plaintiff's religious pendant and chain after Plaintiff wrote to Brown regarding the same.  Amended Complaint at 12 ¶ 27, and 15 ¶ 11.  "'It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite' to a section 1983 claim." *Delee v. Hannigan*, 729 Fed.Appx. 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted)).  Before the Supreme Court decided *Iqbal*, supervisory liability claims for § 1983 claim were analyzed according to the framework set forth in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), specifically providing that

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

The Second Circuit recently clarified that following *Iqbal*, "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachman*, 983 F.3d 609, 618-19 (2d Cir. 2020).  Relevantly, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly."  *Id.* (quotations and citations omitted).  Failing to correct another officer's violation does not suffice; rather, after *Iqbal*, the "active conduct" standard necessary to impose § 1983 liability on a supervisor requires the supervisor either directly participate in the alleged constitutional violation or create a policy or custom under which the alleged unconstitutional practices occurred, *i.e.*, only the first and part of the third categories of supervisory liability identified in *Colon* survive.  *Tangreti*, 983 F.3d at 617 n.4 (citing cases).  Since *Tangreti* was decided, courts within the Second Circuit repeatedly have dismissed claims based on an asserted notification to a supervisory official of an alleged wrong by way of a letter, grievance, or appeal of a disciplinary action.  *See*, *e.g.*, *Smart v. Annucci*, 2021 WL 260105, at * 5 (S.D.N.Y. Jan. 26, 2021) (dismissing *pro se* complaint alleging defendants, both high-ranking prison officials who were alleged to have failed to act on the plaintiff's complaints, because such allegations did not support an inference that the defendants, through their own individual actions, violated the Constitution, stating "[f]ailing to correct another officer's violation does not suffice" to establish a supervisor's direct violation of a plaintiff's constitutional rights).

In the instant case, Plaintiff alleges that he wrote to Defendant Brown complaining about the denial of his religious pendant, but that Brown failed to correct the asserted misconduct.  Amended Complaint at 12 ¶ 27, and 15 ¶ 11.  Accordingly, Plaintiff's sole allegation against Defendant Brown is that Brown failed to remedy a wrong, caused by the actions of others, about which Plaintiff complained in a letter to Brown.  The Second Circuit, however, has repeatedly held that alerting a supervisory official to an asserted wrong through correspondence, grievance, or disciplinary appeal does not state a § 1983 claim against such supervisory official.  *See McCrary v. Marks*, 836 Fed.Appx. 73, 74 (2d Cir. 2021) (holding the plaintiff's claim that the defendant supervisory official received the plaintiff's letter complaining of a violation of the plaintiff's First Amendment right to judicial documents was insufficient to state a claim against such defendant) (citing *Tangreti*, 983 F.3d 618-19).  *Cf. Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (concluding that the Commissioner of the New York State Department of Correctional Services was not personally involved in an alleged constitutional violation where the plaintiff addressed two letters to the Commissioner, the first of which the Commissioner forwarded to another official, and the second of which was simply a request for a status update).

Accordingly, Plaintiff fails to plausibly state a claim against Defendant Brown and Defendants' Motion should be GRANTED as to Defendant Brown.

### B.    Defendant Kintzel

Plaintiff's claims Defendant Kintzel, as the hearing officer for Plaintiff's grievance, denied Plaintiff's request that the pendant be measured.  Amended Complaint at 15 ¶ 10.  Defendants argue that because prison inmates have no constitutional right of

access to any internal grievance process, nor to an adequate investigation of a grievance, Plaintiff has not and cannot state a claim against Kintzel. Defendants' Memorandum at 17-19. Plaintiff has not responded to this argument.

"It is well-established that a prison inmate has no constitutional right of access to an internal grievance process, or to an investigation of his grievance that he deems adequate." *James v. Poole*, 2013 WL 132492, at *5 (W.D.N.Y. Jan. 9, 2013) (citing cases). Moreover, the denial of an inmate's grievance has repeatedly been held insufficient to establish personal involvement in the alleged underlying constitutional violation. *See*, *e.g.*, *Logan v. Graham*, 2021 WL 4440344, at * 5 (N.D.N.Y. Sept. 28, 2021) (dismissing inmate plaintiff's claim that defendant, as inmate grievance hearing officer, was not personally involved in the alleged constitutional deprivation). Accordingly, Plaintiff's allegation that Defendant Kintzel failed to measure the pendant, as Plaintiff requested, during the grievance hearing, fails to plausibly state a constitutional deprivation.

As such, Defendants' motion seeking judgment on the pleadings should be GRANTED as to Defendant Kintzel.

## 8. RLUIPA

Plaintiff's RLUIPA claims also should be dismissed for because the RLUIPA does not provide for a private cause of action for money damages against state official in their official or individual capacities. In particular, the Supreme Court has "held that sovereign immunity forecloses the availability of money damages as a remedy against states and state actors in their official capacities under RLUIPA." *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277,

285-86 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver.")).  Plaintiff therefore cannot his sustain his RLUIPA claim against Defendants in their official capacities.

Nor can Plaintiff sustain his RLUIPA against Defendants in their individual capacities because the "RLUIPA does not provide a cause of action against state officials in their individual capacities."  *Washington*, 731 F.3d at 145.  *See also Tanvir v. Tanzin*, 894 F.3d 449, 465 (2d Cir. 2018) (observing "RLUIPA prohibits both the recovery of money damages from *state* officers sued in their official capacities and in their individual capacities." (citing *Gonyea*, 731 F.3d at 145)), *aff'd*, __ U.S. __; 141 S. Ct. 486 (2020).

Defendants' Motion should thus be GRANTED insofar as Plaintiff seeks monetary damages for an alleged violation of the RLUIPA.

**9.   Qualified Immunity**

Defendants alternatively argue Defendants Broderick, Miller and Johnson are qualifiedly immune from liability on Plaintiff's First Amendment claim.[13]  Defendants' Memorandum at 19-22.  Plaintiff's Response does not address this argument.

"Qualified immunity shields law enforcement officials from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  *Zalaski v.*

---

[13] Insofar as Plaintiff alleges violations of the RLIUPA, qualified immunity does not apply to lawsuits against individuals sued in their official capacity, *Mitchell v. Forsyth*, 472 U.S. 511, 556 n. 10 (1985) (Brennan, J., concurring in part and dissenting in part) (citing *Brandon v. Holt*, 469 U.S. 464 (1985)). Further, there is no cognizable private right of action against state officers sued in their individual capacities, and the RLUIPA does not allow for the award of monetary damages against state officers sued in their official capacities.  *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (citing cases).

*City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), and *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  "An officer is entitled to qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'"  *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 70-71 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (italics in original)).  A qualified immunity analysis asks two questions including whether "the facts show that the office's conduct violated plaintiff's constitutional rights," and, if so, whether "the right was clearly established at the time of defendant's actions."  *Zalaski*, 723 F.3d at 388 (citing *al-Kidd*, 563 U.S. at 735, and *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).  Courts are no longer required to sequentially answer these two questions; rather, it is particularly appropriate to address the second question first where the first question "turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct 'was not objectively unreasonable in light of existing law.'"  *Id.* at 389 (quoting *Coolick v. Hughes*, 699 F.3d 211, 219-20 (2d Cir. 2012)), and citing *al-Kidd*, 563 U.S. at 735.

"To determine whether a right was clearly established, we consider 'whether the right in question was defined with reasonable specificity,' 'whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question,' and 'whether under preexisting law a reasonable defendant officer would have understood that his or her acts were unlawful.'"  *Barnes v. Furman*, 629 Fed.Appx. 52, 55-56 (2d Cir. Oct. 22, 2015) (quoting *Dean v. Blumenthal*, 577 F.3d 60, 68 (2d Cir. 2009)).  Even if the right at issue were clearly established, if it was objectively

reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996). This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on the [legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335 (1986). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Dir. 1991) (internal quotation marks and citation omitted). Also to be considered in determining whether a defendant is qualifiedly immune from personal liability under the First Amendment is whether the defendant had a good faith belief they were carrying out a lawful policy. *See Barnes v. Fedele*, 813 Fed.Appx. 696, 700 (2d Cir. 2020) (affirming district court's determination that state prison officers were qualifiedly immune from liability on Plaintiff's First Amendment and RLUIPA claims asserted under § 1983 based on the defendants' confiscation of the plaintiff's religious head covering in reliance on a DOCCS Directive restricting the wearing of such head coverings to members of certain religions, and the plaintiff identified with a different religion). Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991).

Accordingly, "qualified immunity provides a broad shield. It does so to ensure 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" *Zalaski*, 723 F.3d at 389 (quoting *Filarsky v. Delia*, 566

U.S. 377, 390 (2012)).  "Toward that end, it affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." *Id.* (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).  "In sum, qualified immunity employs a deliberately 'forgiving' standard of review," providing "'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010), and *Malley*, 475 U.S. at 341).

"'[T]he matter of whether a defendant official's conduct was objectively reasonable, *i.e.*, whether a reasonable official [in the defendant's position] would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (bracketed material on original).  Factual questions material to qualified immunity are to be resolved by the fact finder.  *Id.* (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).  "'Once the [factfinder] has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.'" *Id.* (quoting *Zellner*, 494 F.3d at 368).

In the instant case, the court takes judicial notice that Directive # 4202 permits inmates to possess a "pendant" or "medallion" including "[c]rescents with stars and/or moons," which complied with the size and design specified by Directive # 4911.[14]

---

[14] *See James v. Annucci*, 2021 WL 3367530, at * 6 (W.D.N.Y. Aug. 3, 2021) ("The Court may also take judicial notice of DOCCS directives.").  *See also Williams v. Fisher*, 2015 WL 1137644, at * 4 n. 7 (N.D.N.Y. Mar. 11, 2015) (adopting report and recommendation taking judicial notice of Directive # 4202).

Directive # 4911 does not limit the length of chain on which a religious pendant or medallion may hang, but provides such pendant or medallion may not contain stones, and the diameter may not exceed 2". Although Directives # 4202 and 4911 do not necessarily establish Defendants Broderick, Miller, and Johnson would have reasonably believed their conduct was not adverse to any of Plaintiff's constitutional rights, the Directives establish the seizure of Plaintiff's religious pendant and chain was not lawful. *See Morse v. Annucci*, 2015 WL 5725046, at * 8 (N.D.N.Y. Sept. 29, 2015) (adopting report and recommendation recommending denying defendants' motion to dismiss inmate plaintiff's First Amendment claim based on seizure of crucifix, which complied with Directive # 4202, as barred by qualified immunity). Accordingly, Defendants Broderick, Miller, and Johnson should have been aware that confiscating Plaintiff's religious pendant was contrary to Directive # 4202, such that it was not objectively reasonable for Broderick, Miller, and Johnson to believe they were not violating Plaintiff's constitutional rights.

Defendants' Motion should be DENIED with regard to the qualified immunity argument.

## 9.    Dismissal with Prejudice

Although dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, "[w]here it appears that granting leave to amend is unlikely to be productive,...it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the problems with Plaintiff's claims, as pleaded, are substantive such that further pleading cannot cure them and would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (affirming dismissal of *pro se* plaintiff's claim for failure to state a claim with prejudice and without leave to replead where even liberal reading of complaint failed to suggest plaintiff had merely inadequately or inartfully pleaded and plaintiff, speaking through counsel on appeal, suggested no new material that could be pleaded to sufficiently reframe claim, such that repleading would be futile).

Specifically, despite Judge Vilardo's requirement that Plaintiff "ground his professed belief in some Nation of Islam custom or teaching," January 14, 2020 Order at 7 & n. 1, Plaintiff has not done so and, as such, has failed to allege Defendants' confiscation of the religious pendant and chain substantially burdened Plaintiff's religious beliefs, which claim, even if Plaintiff could sufficiently allege, is now moot because Plaintiff is in possession of both the religious pendant and chain such that Plaintiff is without standing to pursue this action.  Nor is there any private right of action under the RLUIPA against Defendants in their individual capacity, nor for money damages in their official capacities.

Accordingly, the dismissal of Plaintiff's claims should be with prejudice and without leave to replead.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion (Dkt. 31), should be GRANTED in part and DENIED in part.  The Amended Complaint should be DISMISSED with prejudice and without leave to replead.  The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    August 18th, 2022
        Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u>**

**<u>extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       August 18th, 2022
             Buffalo, New York